DAMIEN A. LEE, DC Bar No. 430135
GREGORY A. HITZEL, WA Bar No. 39348
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Seattle Field Office
909 First Avenue, Suite 400
Seattle, WA 98104
Telephone: (206) 576-3029
Email: gregory.hitzel@eeoc.gov
*Attorneys for Plaintiff EEOC*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>Plaintiff,<br>v.<br>SCHEELS ALL SPORTS, INC.,<br>Defendant. | NO. 3:26-cv-756<br>**COMPLAINT**<br>**CIVIL RIGHTS – EMPLOYMENT DISCRIMINATION**<br>**JURY TRIAL DEMAND** |

## NATURE OF THE ACTION

Plaintiff United States Equal Employment Opportunity Commission ("EEOC" or "Commission") brings this action under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* ("ADEA"), to correct unlawful employment practices on the basis of age, and to provide appropriate relief to Charging Party Jeri Fulgham ("Fulgham") and a class of similarly aggrieved individuals in the protected age group (40 years or older) who were adversely affected by such practices. The EEOC alleges that Defendant Scheels All Sports, Inc. unlawfully discriminated against Fulgham because of her age (forty years of age) when it involuntarily divested her shares of company stock that she acquired through its Employee Stock Ownership Program (ESOP) over a twenty-year period of working for Defendant, which led to her constructive discharge, and that Defendant had also involuntarily divested the shares of company stock other similarly aggrieved employees had acquired because of their age. Plaintiff



EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
909 FIRST AVE., SUITE 400
SEATTLE, WASHINGTON 98104
PHONE (206) 576-3000
FAX (206) 220-6911
TDD (206) 220-6882

EEOC seeks monetary relief in the form of backpay, and where appropriate, equitable front pay, including the lost compensation that Fulgham and the class of similarly aggrieved individuals would have received from the appreciation in ESOP share value if Defendant had not involuntarily divested the ESOP shares they had acquired over the preceding years, and where appropriate, equitable front pay, liquidated damages, and injunctive relief. Plaintiff EEOC also seeks monetary relief in the form of backpay arising from Fulgham's constructive discharge.

**JURISDICTION AND VENUE**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 7(b) of the ADEA, 29 U.S.C. § 626(b), which incorporates by reference Sections 16(c) and 17 of the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §§ 216(c), and 21.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Nevada and other jurisdictions.

**PARTIES**

3. Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of the ADEA, and is expressly authorized to bring this action by Section 7(b) of the ADEA, 29 U.S.C. § 626(b), as amended by Section 2 of Reorganization Plan No. 1 of 1978, 92 Stat. 3781, and by Public Law 98-532 (1984), 98 Stat. 2705.

4. At all relevant times, Defendant, a North Dakota corporation, has been a corporation continuously doing business in the states of Nevada, as well as other states, and has continuously had at least twenty (20) employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce, within the meaning of Sections 11(b), (g) and (h) of the ADEA, 29 U.S.C. §§ 630(b), (g) and (h).

**ADMINISTRATIVE PROCEDURES**

6. More than thirty (30) days prior to the institution of this lawsuit, Fulgham filed



EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
909 FIRST AVE., SUITE 400
SEATTLE, WASHINGTON 98104
PHONE (206) 576-3000
FAX (206) 220-6911
TDD (206) 220-6882

EEOC Charge No. 34B-2022-00362 alleging that Defendant violated, *inter alia*, the ADEA.

7. On June 9, 2025, the EEOC issued a Letter of Determination for Fulgham's charge finding reasonable cause to believe that Defendant violated the ADEA with respect to Fulgham and a class of similarly aggrieved individuals based on their age, and invited Defendant to join with the EEOC in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8. Thereafter, the EEOC engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

9. The EEOC was unable to secure from Defendant a conciliation agreement acceptable to the EEOC.

10. On November 13, 2025, the EEOC issued Defendant a Notice of Failure of Conciliation advising it that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12. Since at least December 31, 2017, Defendant Scheels All Sports, Inc. has engaged in unlawful employment practices at its locations throughout the United States, in violation of Section 4 of the ADEA, 29 U.S.C. § 623(a)(1), by discriminating against employees over the age of forty with respect to discriminatory compensation, terms, conditions or privileges of employment, through the operation of its Employee Stock Ownership Plan (ESOP).

13. Defendant is a privately held business that operated thirty-three (33) sporting goods stores in fifteen (15) different states as of October 17, 2023, and employed approximately 12,000 employees.

14. Defendant provides an ESOP to eligible employees that is funded 100% by the company.

15. Defendant's privately held shares of company stock are not publicly traded.



EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
909 First Ave., Suite 400
Seattle, Washington 98104
Phone (206) 576-3000
Fax (206) 220-6911
TDD (206) 220-6882

16. The Defendant's ESOP Administrator and an independent third-party auditor complete a valuation process by the end of September each year (also referred to as the third quarter of the company's fiscal year) to determine the per share value of ESOP shares as of December 31st of the prior year.

17. Separate from the annual valuation process of Defendant's ESOP shares, Defendant may also make contributions to the ESOP at its discretion, and grant employees additional ESOP shares.

18. Any employee of Defendant who is at least twenty-one (21) years of age and has worked at least 1,000 hours in a calendar year is eligible to begin participating in the ESOP.

19. Before 2014, all ESOP participants, regardless of age, who worked fewer than 1,000 hours in any calendar year, were not eligible to receive additional ESOP shares for that year from Defendant's contributions, but they still retained their vested shares, and continued to benefit from the future appreciation in value of their vested shares.

20. Defendant uses its ESOP as both a recruiting and retention tool, promoting the ESOP to potential and current employees, encouraging loyalty and long-term commitment.

21. Defendant's CEO wrote letters, sometimes annually, to ESOP participant employees championing Defendant's ESOP.

22. For example, in 2014, the CEO wrote:

> Because our company has performed so well the past 20 years, we could sell $100,000,000 worth of ESOP shares tomorrow if we opened this to any investor, but Scheels ESOP is for Scheels associates only. In 2000, 2001, 2002, 2003, and again in 2004, most retirement plans saw a drop in value as the S&P, NYSE and the NASDAQ lost value. Most had small gains in 2005, 2006, and 2007. Then in 2008, the stock market crashed. Our ESOP continued to rise. Your Scheels ESOP account had a STRONG increase in value in 2010, 2011, 2012 and again in 2013 because your retirement account is tied mainly to the performance of our company. When we perform well, our ESOP retirement accounts appreciate in value.

23. In 2014, 2016, 2019, 2020, and 2021, the CEO wrote:

> I would encourage you to consider Scheels as a career if you have not already made the decision. Our ESOP plan is a good reason to consider this opportunity whether you have been with Scheels for 1 year or 5 years. Hundreds of future associates will



EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
909 FIRST AVE., SUITE 400
SEATTLE, WASHINGTON 98104
PHONE (206) 576-3000
FAX (206) 220-6911
TDD (206) 220-6882

> retire with $1/2 million in their Scheels ESOP account, and many associates will retire in the future with over $1 million in their Scheels ESOP account. They will be Scheels millionaires!

24. Between 2015 and 2024, the value of each ESOP share of Defendant grew significantly.

25. Defendant's managers created a spreadsheet model where employees could estimate their future wealth after inputting their age and accrued ESOP shares.

26. Defendant amended the ESOP in 2014 to prohibit any employee forty years of age or older and who worked fewer than 1,000 hours in any calendar year, from retaining his/her ESOP shares, which forced such an older employee to divest his/her accumulated and vested shares and caused each such older employee to lose the appreciation in value of his/her divested ESOP shares (referred to as "Involuntary Divestment").

27. Defendant justified the 2014 amendment with age-based stereotypes, including speculation that: (a) Younger employees need greater flexibility to start families or attend college; and (b) Older workers have lost knowledge, are no longer invested in the business, and stay part-time just to keep their ESOP stock.

28. Charging Party Jeri Fulgham (born in 1981) started working for Defendant in February 2002 at the Scheels store in Reno Sparks, NV.

29. By December 31, 2010, Fulgham was fully vested in her ESOP account with Defendant which at the time was valued at $15,029.63.

//

//

//

//

//

//

//

//



EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
909 First Ave., Suite 400
Seattle, Washington 98104
Phone (206) 576-3000
Fax (206) 220-6911
TDD (206) 220-6882

30. Between 2011 and 2021, the value of Fulgham's vested ESOP account grew each year as follows (Table 1):

| Year | Balance | Increase[1] |
|---|---|---|
| 2011 | $23,750.29 | 58% |
| 2012 | $39,235.46 | 65% |
| 2013 | $52,135.82 | 33% |
| 2014 | $59,411.72 | 14% |
| 2015 | $65,506.83 | 10% |
| 2016 | $78,178.50 | 19% |
| 2017 | $87,813.97 | 12% |
| 2018 | $119,101.45 | 36% |
| 2019 | $150,477.89 | 26% |
| 2020 | $243,805.26 | 62% |
| 2021 | $428,468.16 | 76% |

31. Fulgham earned approximately $13,104 in wage income during the year 2018 as a part-time Freight/Defectives associate with Defendant, while her ESOP account's value grew approximately $31,287.48 during the same timeframe.

32. In 2019, Fulgham did not work 1,000 or more hours for Defendant, was not eligible to receive any additional ESOP shares for that year, but was able to retain her vested ESOP shares and continue to benefit from annual increases in value because she was not yet forty years of age (or older).

33. In 2020, Fulgham did not work 1,000 or more hours for Defendant, was not able to receive any additional ESOP shares for that year, but was able to retain her vested ESOP shares because she was not yet forty years of age (or older).

34. In 2020 (during a global pandemic), the increase in value of Fulgham's vested ESOP shares represented approximately 91% of her total compensation.

35. After working for Defendant for twenty (20) years, Fulgham turned forty years of age in 2021.

[1] Account value increases include yearly contributions and increases in share value.



EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
909 FIRST AVE., SUITE 400
SEATTLE, WASHINGTON 98104
PHONE (206) 576-3000
FAX (206) 220-6911
TDD (206) 220-6882

36. In 2021 (during a global pandemic), the increase in value of Fulgham's vested ESOP shares represented approximately 93% of her total compensation,

37. During her employment with Defendant from 2015 through 2021, Fulgham successfully performed her duties as a: (a) Full Time, Defectives/Returns associate, and (b) then Part-Time, Freight/Defectives associate.

38. On December 10, 2021, Defendant notified Fulgham that she had only worked 794 hours in 2021 and that her ESOP shares that she had accumulated over the past twenty years would be subject to Involuntary Divestment because she had turned forty years of age in 2021.

39. When Defendant notified Fulgham on December 10, 2021, of her hours worked in 2021, it was not possible for her to work an additional 206 hours by December 31, 2021, to avoid Involuntary Divestment of her ESOP shares.

40. Fulgham was distraught after she met with her Store Leader in December 2021 who confirmed that she was subject to the Involuntary Divestment of her ESOP shares because she had turned forty years old.

41. In December 2021, Fulgham had planned to return to full-time status with Defendant once her children were older. Fulgham intended to work for Defendant for another twenty or more years until retirement.

42. After Defendant informed Fulgham about the Involuntary Divestment of her ESOP shares in December 2021, she appealed to Defendant, including Defendant's President and Board of Directors, asking that an exception be made.

43. Defendant's Board of Directors considered Fulgham's request for an exception to Involuntary Divestment because she turned forty years of age, but Defendant's Board of Directors rejected her request, notifying Fulgham of its decision on January 21, 2022.

44. Fulgham constructively discharged on February 3, 2022, citing the reason as "Lost ESOP."

45. Similarly aggrieved individuals in the protected age group who Defendant also subjected to Involuntary Divestment of their vested ESOP shares include: (1) Former employees



EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
909 FIRST AVE., SUITE 400
SEATTLE, WASHINGTON 98104
PHONE (206) 576-3000
FAX (206) 220-6911
TDD (206) 220-6882

who left employment soon after their vested ESOP shares were involuntarily divested; (2) Former employees who continued working for some years after their vested ESOP shares were involuntarily divested; and (3) Current employees who would have vested ESOP shares but for Defendant's age-based Involuntary Divestment ESOP amendment.

46. The effect of the practices complained of in paragraphs 12 through 45 above has been to deprive Fulgham of equal employment opportunities and otherwise to adversely affect Fulgham's status as an employee because of her age.

47. The effect of the practices complained of in paragraphs 12 through 45 above has been to deprive a class of similarly aggrieved former or current employees of Defendant of equal employment opportunities and otherwise to adversely affect their status as employees because of their age.

48. The unlawful employment practices complained of in paragraphs 12 through 45 above were and are intentional.

49. The unlawful employment practices complained of in paragraphs 12 through 45 above were willful.

## PRAYER FOR RELIEF

WHEREFORE, the EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its owners, officers, employees, agents, attorneys, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of age.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for individuals forty (40) years of age and older, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to rescind the Involuntary Divestment amendment to its ESOP that explicitly discriminates against employees forty (40) years of age and older.

D. Order Defendant to make Fulgham and members of the class whole by providing back pay with prejudgment interest for the lost compensation they would have received from the



EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
909 First Ave., Suite 400
Seattle, Washington 98104
Phone (206) 576-3000
Fax (206) 220-6911
TDD (206) 220-6882

appreciation in value of all vested ESOP shares that were subject to Involuntary Divestment in amounts to be determined as of the date of trial, and an appropriate amount of front pay representing the lost growth in value of their vested ESOP shares that were subject to Involuntary Divestment, or alternatively, restoration of the ESOP shares for Fulgham and each class member that were subject to Involuntary Divestment retroactive to the date of the divestment of those shares.

E. Order Defendant to make Fulgham whole by providing appropriate back pay with prejudgment interest for lost wages, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of the unlawful employment practices described above.

F. Order Defendant to pay Fulgham and members of the class statutory liquidated damages for its willful conduct described above, in amounts to be determined at trial.

G. Grant such further equitable relief as the Court deems necessary and proper to make Fulgham and members of the class whole, and in the public interest.

H. Award the Commission its costs in this action.

DATED this 30th day of September, 2026.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

BY: *<u>/s/ Damien Lee</u>*
Damien A. Lee
Acting Regional Attorney
Seattle Field Office
909 First Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 576-3038
damien.lee@eeoc.gov

BY: *<u>/s/Gregory Hitzel</u>*
Gregory A. Hitzel
Senior Trial Attorney
Seattle Field Office
909 First Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 576-3029
gregory.hitzel@eeoc.gov

CHRISTOPHER LAGE
Deputy General Counsel

Office of the General Counsel
131 M Street, N.E.
Washington, D.C. 20507

Attorneys for Plaintiff EEOC

CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

DATED this 30th day of September, 2026.

*/s/ Jimmy Yen*

Jimmy J. Yen
Paralegal Specialist
Equal Employment Opportunity Commission
909 First Ave., Suite 400
Seattle, Washington 98104
Telephone (206) 576-3043
jimmy.yen@eeoc.gov